WILLIAM H. SNAVELY, III,

       Plaintiff,

                           CIVIL ACTION
   vs.                        No. 05-3468-SAC

KANSAS DEPARTMENT OF CORRECTIONS,
et al.,


       Defendants.


**ORDER**

    This matter is a civil rights action filed pursuant to 42 U.S.C. § 1983 and other provisions of federal and state law by a prisoner in state custody.  Plaintiff proceeds pro se and submitted the filing fee.  The matter comes before the court on plaintiff's amended complaint (Doc. 39).

    The present complaint contains 310 numbered paragraphs of facts and 20 claims for relief.  The court addresses the plaintiff's allegations in sequence, noting, at the outset, that in many instances, plaintiff has introduced claims and new defendants for events that occurred after the time this action was commenced.  Those claims are subject to dismissal.  However, the dismissal of such claims will not prevent plaintiff from

presenting them in a separate civil action, provided they are presented within the 2-year limitations period.[1]

**Par. 1-28**: In September 2005, plaintiff was assigned to work as a dining room porter. While working at that assignment, he slipped and fell in the porters' closet. Plaintiff grabbed a shelf to support himself, but the shelf was not attached and he was trapped under the shelf and its contents. The lights were out because a breaker had been tripped, and the closet was dark.

Plaintiff was taken to the prison clinic in a wheelchair. He was evaluated by Dr. Okolzina, who ordered him to shower and then examined him. Dr. Okolzina then ordered a cane and pain medication.

Thereafter, plaintiff made written and verbal requests for additional evaluation by a specialist.

**Par. 29-35**: Plaintiff contends that since September 3, 2005, he has required a cane, crutches, or wheelchair to ambulate. As a result of his condition, he was transferred to a ground cell floor. On September 14, 2005,[2] plaintiff fell while trying to

---

[1]
The court offers no opinion on plaintiff's statements concerning the exhaustion of remedies.

[2]
The court notes that paragraphs 31-34 (Doc. 39, p. 5) reference September 3, 2009. Reading these paragraphs in the context of the amended complaint, the court construes them to describe events in September 2005 for purposes of

enter the shower, which he estimates as twelve inches high.

He suffered from episodes of numbness in his leg and sought leave to report to the medical clinic. He reports that on these occasions, he was assisted by a prisoner porter and transferred in a wheelchair.

Plaintiff states he made written and verbal requests for crutches or a wheelchair but was denied this equipment until 2006.

**Par. 36-37**: Plaintiff received crutches in June 2006, but the equipment was taken away approximately two weeks later. In 2008, the U.S. Department of Justice investigated a complaint by plaintiff. Defendant offered plaintiff use of crutches or a cane. In June 2009, plaintiff was allowed to have both a cane and crutches but was moved to a cellhouse that was not handicap accessible.

**Par. 38-44:** During late September 2005, plaintiff was reassigned to A Cellhouse. He was able to shower in that cellhouse. He alleges defendant Manibusan took exception to plaintiff's failure to use the wooden shower bench for wheelchair prisoners. Plaintiff claims defendant Manibusan verbally taunted him and threatened to have him transferred back to B-1 cellhouse (B-1).

screening.

Plaintiff filed a grievance for verbal abuse against defendant Manibusan. He alleges Manibusan then verbally abused him for filing the grievance. Plaintiff filed another grievance against defendant Manibusan, and he claims two days later, he was transferred to B-1 in retaliation for his use of the grievance procedure.

**Par. 45-46**: On October 7, 2005, plaintiff asked shift captain Wager to forward an emergency grievance to Warden McKune in which he alleged he was denied access to showers for filing grievances against Manibusan. Plaintiff claims the grievance was not forwarded.

**Par. 47**: In early October 2005, defendant sick call nurse Dorothy took pleasure in advising plaintiff that Dr. Okolzina had removed plaintiff's stair restriction. Plaintiff then told ARNP Bonita Wilson that Dr. Okolzina had not examined him prior to this change, and Wilson reinstated the stair restriction.

**Par. 48-50**: On October 17, 2005, plaintiff again tried to file an emergency grievance with Warden McKune, this time through Unit Team Manager Medill. Defendant Medill told him that he would need to go to the second floor of the cellhouse to deliver the grievance. Plaintiff alleges this establishes that Medill colluded with Dr. Okolzina to alter his medical records. Plaintiff then showed defendant Medill the stair restriction.

He claims defendant Medill was aware at that time that he was unable to safely use the shower. Plaintiff did not have access to a shower until mid-December 2005 when he was transferred to D-Cellhouse. He claims that from mid-September to mid-December he lacked safe access to a shower and used his sink for sponge-baths.

**Par. 51:** Plaintiff alleges he suffered two falls and injured his back, hip, and ankle.[3] He claims the falls were caused by the lack of ambulation aids.

**Par. 52-53:** Plaintiff alleges that on November 17, 2005, defendant Trexler ordered him to stand during afternoon count. Plaintiff filed a grievance about the incident.

**Par. 54-55:** On November 17, 2005, defendant T. Stuart placed a religious tract for a Christian organization into every prisoner's cell. Plaintiff filed a grievance. Thereafter, defendant Trexler posted several of the tracts on the windows of the office, blocked plaintiff's path, and told another prisoner that the tract told about a good program. Plaintiff alleges this exchange was orchestrated to cause him to react and incur a disciplinary report and was retaliation for his grievance.

---

[3] Portions of this paragraph are covered in a note and are illegible (Doc. 39, p. 9).

**Par. 56:** Defendant Trexler sometimes worked overtime in D Cellhouse, and on one occasion, he required plaintiff to stand for count. Plaintiff fell and hit his left hand. He walked to the clinic and obtained medical attention.

**Par. 57-62:** Plaintiff fell twice on wet floors during his placement in D Cellhouse. On another occasion, he states his leg became numb and he stopped walking and asked an officer to call for a wheelchair. The officer refused. Plaintiff attempted to walk but fell down. An officer who observed the fall did not assist plaintiff and said the fall appeared to be fake.

**Par. 63-67:** Two guards arrived with a wheelchair and took plaintiff to his cell. Plaintiff filed sick call requests, seeking medications with no side effects. He claims the medications provided caused some side effects and that only limited amounts were provided to him. Due to his indigence, he is unable to purchase over the counter medications.

**Par. 68-70:** During 2005 and 2006, plaintiff sought medical attention for sleep apnea, stomach problems, and skin diseases. He also sought medical care for skin diseases during 2008-2009.

**Par. 71-72.** Plaintiff asked Dr. Satchell what diagnosis was in the CCS computer in 2008 concerning his back problems. Dr. Satchel found no such reference and ordered a nerve damage test, which was performed in May 2009.

**Par. 73-75:** A neurologist told plaintiff there was evidence of a pinched nerve, and on June 2, 2009, plaintiff was taken to Cushing Medical Plaza for an MRI. That test also showed evidence of a pinched nerve.

**Par. 76-79:** Plaintiff suffers from sleep apnea, gastro-esophageal reflux disease, and skin disease. His requests for treatment by a dermatologist have been denied. He has received treatment from defendants Houang, Legler, and Satchell, but he has not obtained relief. He also has constant low back pain.

**Par. 80-88:** Plaintiff believes it is unsafe for him to walk up steep inclines without assistance where no handrail is available. He has been required to walk up to see defendants Walker, Medill, and Nance in the Q Cellhouse for various administrative purposes. He contends the walkways are too steep for a handicap-accessible route and that they lack handrails. He filed a personal injury complaint with the prison in April 2009 regarding his concerns with the accommodations and the pain he suffers following his transfer from K Unit to Q-1 Dormitory. The complaint was rejected by defendant Jones, who stated plaintiff had not sustained any injury.

**Par. 89-90:** Plaintiff suffers daily pain due to his placement in the Q-1 dormitory. He has been denied alternate bunk assignments, and he sometimes has not had access to the ramp to

the dormitory.  He seeks injunctive relief to allow him to move to lower K Unit or to have defendants make the Q-1 area handicap accessible and to remove dogs from the unit.

**Par. 91-94:**  Plaintiff claims he had at least 15 unanswered grievances at the time he filed this action and that he complained to Warden McKune and Secretary Werholtz.  After he complained, defendant Medill filed two disciplinary reports charging him with disrespect, lying, and falsifying documents.  Plaintiff claims he has been afraid to file grievances since December 8, 2009.

**Par. 95-97:** On April 13, 2009, defendant McKune ordered plaintiff's transfer to Q-1 dormitory, a non-handicap-accessible cellhouse.  On June 2, 2009, defendants Pearson, Jones, and Schiller abused and injured plaintiff while he was in their custody outside of the prison facility.  He now fears for his life.

**Par. 98:** Plaintiff was injured in September 2005 and was sometimes denied the use of crutches or a wheelchair until approximately 2008.  He was diagnosed in 2009 and thereafter was sometimes denied testing and pain medication.  He has been prevented from using personal funds to obtain treatment outside the Department of Corrections.

**Par. 99-102:**  Plaintiff alleges unnamed prison guards have

failed to properly process his grievances and that defendants McKune, Jones, and Werholtz ignored this. Defendants McKune and Werholtz rejected some grievances because they had not been processed by defendant Medill. Plaintiff states he was afraid to file grievances concerning subsequent events. As an example, he cites an incident on January 2, 2006, in which defendant Spear ordered him to either stand for count or to produce a doctor's order excusing him from standing.

**Par. 103-105:** Plaintiff incurred copying expenses while pursuing administrative remedies and expenses for legal costs, copies, and postage. He earns an average of $200.00 per year, and some of his disability income has been seized by unnamed defendants.

**Par. 106-109:** In 2007, defendants Medill and Rutlege required plaintiff to mail out four boxes of legal documents. Prior to June 2007, plaintiff had been allowed to retain all legal materials. After plaintiff commenced this action, unnamed defendants amended internal facility rules restricting the amount of legal materials a prisoner may possess.

**Par. 110-115:** Prisoners are provided storage space for handi-craft property and for items associated with religious obser-vance. Plaintiff has requested additional storage space for legal materials. The Department of Corrections does not offer additional storage for legal materials; rather, excess materials

must be destroyed or mailed out of the facility.

**Par. 116:** Plaintiff states he is unable to complete the amended complaint because he lacks access to some of his legal materials.

**Par. 117-118:** Plaintiff attempted to file a personal injury claim with the Joint Committee on Special Claims Against the State for injuries he received in 2005-2006. He also attempted to file a personal injury claim with that committee for injuries received in 2009. Both claims were refused.

**Par. 119:** Plaintiff attempted to file personal injury claims with the Lansing Correctional Facility for all injuries identified in this action.

**Par. 120-142:** Plaintiff suffered a heart attack in June 2007. He was taken to Providence Hospital where he underwent surgery. Shortly after surgery, he suffered a second heart attack. A KDOC employee notified the nursing staff at the hospital, and plaintiff was given morphine and returned to surgery. He complains that during the second surgical procedure, the surgeon scolded him for moving and for cursing. Plaintiff asserts he was humiliated by that scolding, and he claims the second heart attack was avoidable.

**Par. 143-149:** In 2006, defendant Medill assigned plaintiff to work as a dining room porter. On his first day, plaintiff

objected to the assignment. Defendant Harper ordered him to work. Plaintiff fell shortly after beginning to work. Defendant Harper ordered him to remain on the floor until a nurse arrived and refused plaintiff's request for assistance in standing. The nurse who reported told plaintiff that he would have to walk to the clinic for treatment as a shift lieutenant told her not to bring a wheelchair. The lieutenant watched plaintiff walk and came to the dining room to observe him. He remarked that if plaintiff were unable to work, his medium custody level would be revoked.

**Par. 150-154:** Plaintiff walked to the medium clinic with assistance from an inmate porter. He was not offered pain medication, and the nurse, defendant Sussanah, accused him of malingering. He was told to return to the Q-1 cellhouse.

**Par. 155-159:** Plaintiff returned to work the next day and continued to work until December 2006. He was exposed to verbal taunts during this period and suffered pain. He also claims he was subjected to antagonism, neglect, and deliberate indifference by defendant Beckham, Unit Team Counselor.

**Par. 160-176:** In March 2009, defendant Beckham wrote a disciplinary report against plaintiff for disrespect. Plaintiff claims the charge was fabricated. Plaintiff also claims defendant Beckham deliberately created situations in which

plaintiff was required to stand or walk for long periods and that she colluded with defendant Julie, a secretary in the chaplain's office, to impede his legal work. Defendant Ayala-Pagan, acting shift lieutenant, refused to intervene and told plaintiff he would have to get the proper forms to have copies made. Plaintiff obtained the appropriate forms and copies, but he claims he was subjected to pain in making the necessary trips between areas of the prison.

**Par. 177-181:** In returning to his living area after obtaining copies, plaintiff fell. Defendants Peters and Risling arrived but refused to call a medical emergency. However, defendant Peters called the clinic and asked for a nurse. The nurse arrived with a wheelchair, and defendants Peters and Risling assisted plaintiff into it. Plaintiff received an injection for pain. Defendant Peters did not prepare an incident report.

**Par. 182-189:** Approximately one week prior to the fall, defendant Beckham ordered defendant Robinson to escort plaintiff to Beckham's office to sign a disciplinary report. Plaintiff claims the form could have been brought to his cell. While returning to his cell, plaintiff stopped to rest but then tried to walk through a door. He fell and hit his head. Defendant Robinson called a medical emergency, and a nurse came with a wheelchair. Plaintiff was left in a chair in the examination

12

room and then transferred to the hallway.

**Par. 190-191:** On April 13, 2009, plaintiff was transferred from K Unit to Q-1. Defendant Jones refused to process a personal injury claim plaintiff submitted.

**Par. 192-193:** On April 19, 2009, defendant Kozel deliberately startled plaintiff awake, causing him to have a mild heart attack. Plaintiff filed a personal injury claim asking administrators to warn guards of all prisoners with a history of heart attacks. No relief was granted.

**Par. 194-195:** On April 25, 2009, the Q-1 dormitory flooded during a rainstorm, and unsanitary run-off water was in the plaintiff's living area for several hours.

**Par. 196:** In order to visit unit counselors in Q-2 or Q-3, plaintiff must use an inclined walkway.

**Par. 197:** Plaintiff has notified defendants McKune and Werholtz of all the complaints identified in this action.

**Par. 198-215:** Plaintiff has dental problems that are exacerbated by acid reflux. Two of his teeth have been extracted, and he has had four filings repaired. Plaintiff unsuccessfully sought to have other services provided at his own expense. He has suffered tooth infections, and his remaining teeth have shifted, causing pain. He also complains of difficulty in chewing.

**Par. 216-220:** On September 29, 2009, plaintiff saw defendant Havner for a complaint of pain.  Defendant Havner told plaintiff a prescription would be available at the clinic, but plaintiff did not receive that prescription.  He claims he needlessly suffered pain between 9 a.m. and 4 p.m.

**Par. 221-223:** Defendant Lawhorn established a policy in the medium clinic that no nsaid[4] pain relievers may be prescribed in "KOP" [keep on person] status.  Plaintiff claims this is discriminatory, as  prisoners with adequate funds may purchase such medication from the prison store and keep it in their cells.  Plaintiff lacks access to sufficient assets to purchase medication through the store.

**Par. 224-227:**  Plaintiff claims defendants have unlawfully seized his assets to pay accrued fees for legal and medical fees.  He claims defendants refused to provide any way for him to pay costs associated with a divorce action.

**Par. 228-232:**  On September 19, 2008, plaintiff was referred to Impact Design, a private employer with operations at the prison. He was not hired.  Plaintiff seeks to add defendants to this action concerning these events.

_____

[4]Nonsteroidal anti-inflammatory drug.

14

**Pr. 233-270:** Plaintiff suffered injuries due to falls in the K Unit. He attributes these falls to the failure to allow him to retain both a cane and crutches. On June 2, 2009, he was injured in a fall at the Cushing Medical Plaza. He was escorted to that appointment in belly-chains and hand and ankle cuffs. Plaintiff told one of the escorting officers that he could not walk with a cane while wearing restraints. Officers refused to remove the restraints. Upon arrival at the medical facility, plaintiff was lifted from the van but was directed to walk to the building. Plaintiff walked several yards but fell before he reached the building. Plaintiff was ordered to get up but refused, due to pain. An ambulance arrived and took plaintiff to Cushing Hospital where he received x-rays and pain medication. He returned to the prison in a wheelchair van.

**Par. 271-287[5]:** Upon his return to the prison, plaintiff refused to sign a medical release from. Plaintiff was again taken to the Cushing Medical Plaza for an MRI. The procedure lasted approximately one hour. Following the procedure, plaintiff was placed in restraints, seated in a wheelchair, and placed in a van for transport. The wheelchair shifted during turns and stops, causing plaintiff pain.

---

[5]The pleading contains two paragraphs numbered as "287".

**Par. 287-295:** Upon returning to the prison, defendant Schiller wheeled plaintiff to the visitors' entrance. One of the escorting officers returned to the van to retrieve paperwork. Defendant Schiller tilted the wheelchair back and forth and dropped it and also beat on the handgrips of the chair, causing plaintiff pain. Plaintiff called for help, and a woman opened the door to the visitors' entrance and held the door open. Plaintiff was taken to the clinic, where he remained until 4 p.m. and then was escorted by a porter to the Q-1 dormitory. He received injections for pain for the next two days.

**Par. 296-298:** Plaintiff claims defendants have denied him adequate accommodations for his disability since September 2005. In June 2009, defendant McKune entered an agreement with the U.S. Department of Justice to provide plaintiff with a handicap aide.

**Par. 298-302:** Following the agreement, a physician scheduled plaintiff for a test preparatory to surgery. Plaintiff refused the test and the surgery. After he was advised he must sign a refusal form, receive a disciplinary report, or report for the test, plaintiff signed the refusal form.

**Par. 303-310:** Plaintiff states that under IMPP 10-109 II. B., he is entitled to Level A pay as a prisoner who is medically unable to work. He also states that disability pay cannot be seized

without due process and that he is indigent, as defined by LCF General Order 12, 104, and has been since 2005. Plaintiff states that since his facility debt exceeds $50.00, he must request funds for mailing or copying, that this request entails a wait, and that such wait is discriminatory.

**Screening**

The court has examined the complaint pursuant to 28 U.S.C. § 1915A, which requires the court to review a complaint in which a prisoner seeks redress from a governmental entity, officer, or employee.

Because plaintiff proceeds pro se, his pleadings are given a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, a court should not become an advocate for a pro se litigant and should dismiss claims that are unsupported. *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). *See also Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)("[T]he court cannot take on the responsibility of...constructing arguments and searching the record.").

By a previous order, the court advised:

> Plaintiff must present the court with a comprehensible statement of his claims and of the relief he seeks. He need not, at this stage, present detailed legal argument; rather, he must identify the specific acts or omissions that allegedly violated his rights, the person or persons who perpetrated the acts, when they occurred, and the relief sought. (Doc. 34, p.2.)

An amended complaint supercedes the original complaint. *See Mink v. Suthers*, 482 F.3d 1244, 1254 (10th Cir. 2007)(citations omitted)("[A]n amended complaint supercedes an original complaint and renders the original complaint without legal effect[.]")

Next, the Federal Rules of Civil Procedure govern the joinder of claims and parties in a single lawsuit. First, pursuant to Rule 18(a), "A party asserting a claim to relief ... may join "either as independent or as alternative claims, as many claims, legal, equitable or maritime, as the party has against an opposing party." Pursuant to Rule 20(a)(2), the joinder of several parties is permissible if (A) the claims arise "out of a single transaction, occurrence, or series of transactions" and there is a question of fact or law common to all defendants, and (B) any question of law or fact common to all defendants will arise in the action. Thus, while joinder is encouraged for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues." *Zhu v. Countrywide Realty Co., Inc.*, 160 F.Supp.2d 1210, 1225 (D.Kan. 2001) (citation omitted).

These provisions apply to claims filed by parties

proceeding pro se. Thus, "[u]nrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that this [multiple]-claim, [multiple]-defendant suit produced but also to ensure that prisoners pay the required filing fees." *George v. Smith,* 507 F.3d 605, 507 (7th Cir. 2007). *See Smith v. Kirby,* 53 Fed. Appx. 14, 16 (10th Cir. Dec. 9, 2002)(finding no abuse of discretion where district court denied leave to amend or supplement the complaint where the "new claims were not relevant to the claims before that court....").

Having considered the numerous allegations and claims presented by the amended complaint, the court enters the following findings and conclusions.

**Claims 1 and 2 (Par. 1-26)**: Plaintiff's claims alleging he was injured due to unsafe conditions, deliberate indifference to inmate safety, and lack of training will be allowed to proceed. The court construes the pleading to assert claims against defendants Reece, Walters, Foster, and Blankenship.

**Claim 3 (Par. 27-50):** Plaintiff's claims alleging the denial of adequate accommodations for his disability and retaliatory conduct in violation of the Americans with Disabilities Act and in violation of his constitutional rights will be allowed to proceed. The court construes the pleading to assert claims against defendants Okolzina, Ware, Jackson, Bartz, Trexler,

19

Medill, Manibusan, Wager, and McKune.

**Claim 4 (Par. 52-53, 56, 101-102):** Plaintiff's claims alleging he was required to stand for count when doing so caused him great pain will be allowed to proceed. Plaintiff's claims alleging verbal abuse are dismissed.[6] The court construes the pleading to assert claims against defendants Trexler and Spear.

**Claim 5:** Plaintiff identifies no facts in support of this claim, which alleges the denial of a handicap aide and the denial of ambulatory aids during his placement in D Cellhouse. Pars. 58 and 59 allege two falls on wet cell floors in that area but allege plaintiff's cane slipped, which is not consistent with the claim that he was denied ambulatory aids. The paragraphs immediately following (par. 60 - 62) are cited as the factual basis for Claim VII. Accordingly, the court dismisses Claim V.

**Claim 6 (Par. 45-46):** Plaintiff claims he submitted an emergency grievance which shift captain Wager refused to forward to Warden McKune. The court will allow this claim to proceed and construes the claim as one against defendant Wager.

**Claim 7 (Par. 60-62):** Plaintiff claims he fell on one occasion after requesting a wheelchair and being denied assistance. The court will allow this claim to proceed and construes the

---

[6]*McBride v. Deer*, 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001).

pleading to assert claims against defendants Green and Doe.

**Claim 8 (Par. 63-66 and 71-75)**: Plaintiff claims defendants deliberately failed to enter any diagnostic information into prison records concerning his back injury and that as a result he was denied adequate accommodations including shower facilities and ambulatory aids. He claims this was in retaliation for his pursuit of grievances, for refusing to sign an agreement to pay for an MRI, and for filing the present lawsuit. The court dismisses these claims.

The paragraphs cited by plaintiff as the factual basis for this claim do not identify any defendant who is allegedly responsible for these events; his claim concerning his sick call requests identifies side effects he suffered from various medications and shows he received medical attention but was dissatisfied with all but one medication provided[7]; his claim concerning a nerve damage test conducted in May 2009 involves events that occurred long after he filed this action; and he

---

[7]
Prison officials violate the Eighth Amendment when a deprivation is "sufficiently serious" and results from "deliberate indifference" to a prisoner's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). However, a prisoner's disagreement or dissatisfaction with treatment offered by prison medical staff is not sufficient to establish deliberate indifference. *See Perkins v. Kansas Department of Corrections,* 165 F.3d 803, 811 (10th Cir. 1999).

makes no factual allegation in support of a claim of retaliation by any defendant.

**Claim 9 (Par. 68-70, 76-78, 98)**: Plaintiff claims he has not been provided effective medical treatment for gastro-esophageal reflux disease, sleep apnea, skin diseases, and a spinal injury. He alleges violations of the Eighth Amendment and of the Americans with Disabilities Act. Because plaintiff has failed to identify any defendant who participated in the events giving rise to his claim, the claim must be dismissed.

**Claim 10 (Par. 91-94, 117-119):** Plaintiff complains of interference with his use of the grievance procedure and the issuance of disciplinary charges against him for disrespect, lying, and falsifying documents; he also alleges a refusal to process a personal injury claim he submitted to the Lansing Correctional Facility. The court will allow this claim to proceed and construes the pleading to assert claims against defendants defendants McKune, Werholtz, Medill, and Jones.

**Claim 11 (Par. 103-116, 159-181, 310)**: Plaintiff complains of costs associated with use of the grievance procedure, that in 2007, he was required to mail a 5-foot stack of legal documents and photographs out of the facility, and that he has not been given extra storage space for his papers. He complains of a disciplinary report he received in March 2009, and of

22

difficulties he has experienced in obtaining copies, apparently in 2009. He also complains that he has been required to wait long periods of time for copies due to his debt for earlier copies and supplies. This claim will be dismissed. Plaintiff's allegations in this claim appear to be unrelated to the claims advanced elsewhere in this action and to have occurred long after plaintiff filed this action.

**Claim 12 (par. 54-55):** Plaintiff claims he and other prisoners were given religious tracts for a Christian organization and that thereafter an officer told another prisoner in plaintiff's presence that it was a good program. Plaintiff alleges this was done to goad him into an outburst so that he could be disciplined. The court will direct a response on the distribution of the tract but dismisses the portion of this claim that asserts communication between an officer and another inmate violated plaintiff's protected rights. The court construes the pleading to assert a claim against defendant Stuart.

**Claim 13 (Par. 198-220):** Plaintiff complains of deliberate indifference to his pain and suffering from inadequate dental treatment. Because the factual allegations cited by plaintiff appear to involve events that occurred in 2009, the court will dismiss the claims from this action.

**Claim 14 (Par. 81-89, 95, 190-191, 194-195):** Plaintiff complains he is housed in an area which is not accessible, that his transfer to the Q-1 dormitory placed him in a non-handicap-accessible area, and that the Q-1 dormitory flooded during a rainstorm. Because of all of these events occurred in 2009, the court will dismiss them from this action.

**Claim 15 (Par. 94-97 and 234-296):** Plaintiff claims he has been afraid to file grievances since December 2009, that he was transferred to Q-1, a non-handicap-accessible dormitory in April 2009, and that in June 2009, staff subjected him to verbal and physical abuse and injury while he was outside the premises of the prison for transport to and from a local medical facility. Because all of these events occurred in 2009, the court will dismiss them from this action.

**Claim 16 (Par. 120-142):** Plaintiff complains of the medical care he received in 2007 at the Providence Hospital. Because these allegations are unrelated to plaintiff's claims concerning the conditions of his confinement, involve other defendants, and occurred in a different location, the claim will be dismissed.

**Claim 17 (Par. 192-193):** Plaintiff complains a corrections officer deliberately startled him on April 19, 2009, causing him to suffer a mild heart attack. Because this event occurred in 2009 and appears to be unrelated to other claims set forth in

this action, this claim will be dismissed.

**Claim 18 (Par. 26-39, 79-80, 143-158, 196-197, and 233):**
Plaintiff complains of an on-going course of abuse based upon
his requests for accommodation due to his disability. His
claims of verbal abuse by defendants Gwaltney and Dunn are
dismissed. The court will allow the balance of this claim to
proceed and construes the pleading to assert a claim against
defendants Okolzina, Ware, Dorothy, Jackson, Bartz, Trexler,
Medill, Walker, Nance, Harper, Sussanah, Doe, McKune, and
Werholtz.

**Claim 19 (Par. 228-232):** Plaintiff complains of the decision by
Impact Design, LLC., rejecting him for employment in 2008.
Because this occurred long after the filing of this action and
involves events and defendants unrelated to the remaining
claims, this claim will be dismissed.

**Claim 20 (Par. 110-116):** Plaintiff challenges the directive that
he send material out of the prison to comply with restrictions
on personal property.[8] These facts are essentially the same as

---

[8]
The Tenth Circuit has found that "a prison rule limiting the
amount of legal material that a prisoner could retain in his
cell was reasonable and necessary and did not violate the
constitutional right of access to the Courts." *Clemmons v.
Davies*, 86 F.3d 1166, 1996 WL 282283, at *3 (10th Cir.
1996)(unpublished)(citing *Green v. Johnson*, 977 F.2d 1383,
1390 (10th Cir. 1992)).

those presented in Claim 11, and, because the allegations are unrelated to the claims advanced elsewhere in this action and occurred long after plaintiff filed this action, this claim will be dismissed.

## Conclusion

For the reasons set forth, the court dismisses Claims 5, 8, 9, 11, 13, 14, 15, 16, 17, 19 and 20 from this action without prejudice. The court will direct a response on the remaining claims, that is, Claims 1, 2, 3, 4, 6, 7, 10, 12, and 18, and will direct service to the defendants identified herein as named in those claims.

IT IS, THEREFORE, BY THE COURT ORDERED Claims 5, 8, 9, 11, 13, 14, 15, 16, 17, 19 and 20 are dismissed from this action without prejudice.

IT IS FURTHER ORDERED officials of the Lansing Correctional Facility shall prepare a report concerning the remaining claims, Claims 1, 2, 3, 4, 6, 7, 10, 12, and 18, pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).

IT IS FURTHER COURT ORDERED that:

(1) The clerk of the court shall prepare waiver of service forms for defendants Ware, Okolzina, Bartz, Jackson, Sussanah, Dorothy, Werholtz, McKune, Green, Blankenship, Wager, Medill, Walker, Nance, Manibusan, Stuart, Jones, Reece, Walker, Foster,

26

Harper, Trexler, and Spear pursuant to Rule 4(d) of the Federal Rules of Civil Procedure, to be served by a United States Marshal or a Deputy Marshal. Costs shall be assessed to plaintiff absent a finding by the court that plaintiff is able to pay such costs. Answers or responses to the complaint, including the report required herein, shall be filed no later than sixty (60) days from the date of this order.

(2) Officials responsible for the operation of the Lansing Correctional Facility are directed to undertake a review of the subject matter of the complaint:

(a) to ascertain the facts and circumstances;

(b) to consider whether any action can and should be taken by the institution to resolve the subject matter of the complaint;

(c) to determine whether other like complaints, whether pending in this court or elsewhere, are related to this complaint and should be considered together.

(3) Upon completion of the review, a written report shall be compiled which shall be attached to and filed with the defendants' answer or response to the complaint. Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations, official documents and, wherever appropriate, the reports of medical or psychiatric examinations shall be

included in the written report.

(4) Authorization is granted to the officials of the Lansing Correctional Facility to interview all witnesses having knowledge of the facts, including the plaintiff.

(5) No answer or motion addressed to the complaint shall be filed until the report requested herein has been prepared.

(6) Discovery by plaintiff shall not commence until plaintiff has received and reviewed defendants' answer or response to the complaint and the report requested herein. This action is exempted from the requirements imposed under Fed.R.Civ.P. 26(a) and 26(f).

IT IS FURTHER ORDERED the clerk of the court shall enter the Kansas Department of Corrections as an interested party on the docket for the limited purpose of preparing the *Martinez* report ordered herein. Upon the filing of that report, the Department of Corrections may move for termination from this action.

Copies of this order shall be transmitted to plaintiff, to defendants, and to the Attorney General for the State of Kansas.

**IT IS SO ORDERED**.

Dated at Topeka, Kansas, this 30th day of September, 2010.




                              S/ Sam A. Crow
                              SAM A. CROW
                              United States Senior District Judge