# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

WILLIAM H. SNAVELY, III,

                     **Plaintiff,**

        **v.**                                     **CASE NO. 05-3468-SAC**

KANSAS DEPARTMENT OF CORRECTIONS, et al.,

                     **Defendants.**

## MEMORANDUM AND ORDER

This matter is a civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff, a prisoner in state custody, proceeds pro se. He commenced this action with twenty claims against sixty-one defendants, alleging violations of his constitutional rights caused by the conditions of his confinement. The court has limited the action to nine claims against twenty-four defendants.

On October 8, 2012, defendants Blankenship, Foster, Green, McKune, Nance, Spear, Trexler, Walker, and Werholtz ("defendants") filed a motion to dismiss, or, in the alternative for summary judgment (Doc. 156). Plaintiff filed a response to that order on November 6, 2012 (Doc. 167), asserting, in part, that he did not receive a copy of that motion or the supporting memorandum.

On May 22, 2013, the court directed counsel for the defendants to transmit additional copies of those documents to the plaintiff; the court received notice on the same day that the documents had been transmitted. Thereafter, the court entered an order directing the plaintiff to submit any supplement to his response on or before June

24, 2013, and advising that no additional extension would be granted.

Plaintiff filed a response on June 13, 2013 (Doc. 176), and defendants have submitted a reply (Doc. 177). The court has examined the record and enters the following findings and order.

*Pro se status*

As noted, plaintiff is proceeding without counsel. Accordingly, his pleadings, including those related to the present motion for summary judgment, must be given a liberal construction. *See Hall v. Bellmon*, 935 F.2d 1106, 1110, & n. 3 (10th Cir. 1991); *Hill v. Corrections Corp. of America*, 14 F.Supp.2d 1235, 1237 (D. Kan. 1998). The court must excuse a failure to cite proper legal authorities, confusion of legal theories, and poor grammatical composition. *Hall*, 935 F.2d at 1110. However, plaintiff's pro se status does not relieve him from an obligation to follow the rules of procedure, including the Federal Rules of Civil Procedure. *See Kay v. Bernis*, 500 F.3d 1214, 1218 (10th Cir. 2007) and *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)(internal punctuation and citations omitted)("This court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants.")

Likewise, while the court will make allowances in reviewing plaintiff's pleadings, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). A pro se party may not rest upon conclusory factual allegations because "a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injuries". *Hill v. Corrections Corp. of America*, 14 F.Supp.2d 1235, 1237 (D.Kan. 1998). Accordingly, the court must dismiss claims that

are not supported by well-pleaded allegations of fact.

*Summary judgment standard*

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988).

Pursuant to Rule 56(a), a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.Pro. 56(a). The moving party bears "both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2003).

In response, the opposing party may not simply rest on its pleadings but must present specific facts showing there is a genuine issue for trial and significant supporting evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A genuine issue exists if "there is sufficient evidence on each side so that a rational trier or fact could resolve the issue either way." *Thorn v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003).

The summary judgment rule is not a "disfavored procedural shortcut" but instead, a procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 327 (1986)(quoting Fed.R.Civ.P. 1).

*Analysis*

As noted, this matter is proceeding on nine claims. Defendants seek summary judgment or dismissal on all of these claims. While plaintiff filed a response to their motion, he has not made any effort to controvert the facts identified by defendants. The court therefore examines the claims on the defendants' uncontroverted statement of the relevant facts.

During all relevant times, plaintiff was incarcerated in the custody of the Kansas Department of Corrections at the Lansing Correctional Facility (LCF). The defendants are: Roger Werholtz, the Secretary of Corrections, now retired; David McKune, Warden of the LCF, now retired; Michael Green, EA1 Officer at LCF; Sharon Blankenship, the Fire/Safety Officer of the LCF; Deborah Walker, a Unit Team Manager at LCF; Charles Nance, a Corrections Supervisor II at LCF; James Spear, a Corrections Supervisor I at LCF; Jerry Trexler, a Corrections Supervisor I at LCF; and Amber Foster, a Corrections Officer at LCF.

*Claims 1 and 2*

In September 2005, plaintiff was a dining room porter in the maximum security dining room.[1] Plaintiff alleges that he reported on September 2, 2005, that the lights in the porter's closet were not working and that defendant Walters picked up the phone to address that report.[2] Plaintiff claims that when he returned to work on the following morning, defendant Foster was on duty and the closet lights had not been repaired. On September 3, 2005, plaintiff fell in the

---

[1] Doc. 39, par. 1.
[2] Id., par. 10-12.

porter's closet shortly after noon and was struck by falling shelving. Defendant Foster, a corrections officer, responded and called for medical response, waited for the responders to arrive, and then prepared Incident Report 01-06-0448.[3]

Plaintiff claims he is entitled to relief because defendants Walters, Foster, and Blankenship acted with deliberate indifference to his safety and failed to provide safety training to prisoners assigned as dining room porters.

*Deliberate indifference*

"The Eighth Amendment's prohibition on cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including…reasonable safety from serious bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008)(citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Under this standard, a prison official is liable if the official "knows of and disregards an excessive risk to inmate health or safety", *Farmer, id.* at 828.

To establish a claim for relief under this standard, a plaintiff must show both that he was "incarcerated under conditions posing a substantial risk of serious harm, and … defendants were deliberately indifferent to his safety." *DeSpain v. Uphoff*, 264 F.3d 965, 971-72 (10th Cir. 2001)(citing *Farmer*, 511 U.S. at 834).

Plaintiff must meet two requirements: "[f]irst, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer, id.*, (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)("For a claim…based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious

---

[3] Doc. 65-3, *Martinez* report, p. 3.

harm.") Next, plaintiff must show the defendants have a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 297, namely, "one of 'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834.

Defendants assert that plaintiff has failed to establish deliberate indifference. They point out that he acknowledges that after he reported that the lights were out in the porter's closet, defendant Walters made a telephone call to report the situation, and they contend this was a reasonable response. Likewise, when defendant Foster came on duty the next day, even if she was aware that the lights were not working properly, there is no evidence that she knew of any spill in the closet or any other substantial risk to safety.

The record does not support a claim of deliberate indifference. The facts alleged by plaintiff show that defendant Walters took action to report the lights immediately upon receiving notice, and there is no allegation that defendant Foster knew of any conditions in the closet that posed any substantial risk of harm.

*Failure to train*

Plaintiff asserts that he did not receive proper training for his assignment as a dining room porter "regarding safety procedures and maintaining a safe working environment".[4]

Generally, to prevail on a claim seeking liability for failure to train or supervise, a plaintiff must show "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers … can reasonably be said to have been deliberately indifferent to the need for additional training." *Jenkins v. Wood*, 81 F.3d 988,

_____

[4] Doc. 39, p. 47.

994 (10th Cir. 1996).

Defendants point out that plaintiff has done no more than identify defendant Blankenship as the Fire/Safety Officer for LCF and to assert that he had not been trained during the brief period, less than one week, that he had been assigned as a dining room porter.

The record does not suggest any specific act or omission by defendant Blankenship, nor does plaintiff identify any specific information about the training he believes was needed or any causal link between the lack of training and his fall. His bare assertion that he did not receive appropriate training does not establish any basis to impose liability on the defendant.

The court concludes defendants Walters, Foster, and Blankenship are entitled to summary judgment on these claims.

*Claim 3*

Plaintiff has been restricted from climbing stairs since July 28, 2005. On September 3, 2005, he was issued a cane.[5]

In mid-September 2005, he reported that he had slipped and fallen on the way to use the shower in Housing Unit B-1 (B-1).[6] Defendant Trexler prepared Incident Report 01-06-0544 on September 15, 2005, reporting that plaintiff reported a fall and had been taken to the facility medical clinic by a nurse.[7]

On or about September 17, 2005, plaintiff filed a grievance seeking the use of handicapped shower facilities. He received a response explaining that because he was not classified by medical staff as "unassigned medical" or "handicapped", he would be required

---

[5] Doc. 84, par. 11-12.

[6] Doc. 39, par. 31; Doc. 65-3, p.2.

[7] Doc. 65-3, p.2.

to use the regular shower facilities in B-1.[8]

On October 5, 2005, William L. Cummings returned an undated grievance prepared by plaintiff to him because he had failed to comply with the grievance procedures under K.A.R. 44-15-102(c)(4).[9]

Plaintiff claims he was denied proper accommodations for his disability and that he was subjected to retaliatory conduct.

Defendants seek summary judgment on this claim based upon plaintiff's failure to exhaust administrative remedies, his failure to state a claim under the Americans with Disabilities Act (ADA), and his failure to establish a claim under the Eighth Amendment.

*Exhaustion of grievance procedures*

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA), a prisoner must exhaust all available administrative remedies before commencing an action under §1983 or other federal law. Section 42 U.S.C. § 1997e(a) states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

This procedure is mandatory, and a prisoner may not pursue an unexhausted claim in federal court. *Jones v. Bock*, 549 U.S. 199, 211 (2007). The requirement that a prisoner exhaust all available grievance procedures "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*

---

[8] Doc. 65-3, p. 10.

[9] Doc. 65-3, p. 7.

*v. Nussle*, 534 U.S. 516, 532 (2002). A plaintiff must properly pursue the grievance procedure, and "[a]n inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under the PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

In Kansas, a state prisoner ordinarily may exhaust remedies by seeking an informal resolution of a grievance with facility staff, and then by presenting formal, written grievances in turn to the Unit Team, the Warden, and the Secretary of Corrections. K.A.R. 44-15-101. Under certain circumstances, a prisoner may present a grievance directly to the level at which corrective action is available. K.A.R. 44-15-106. However, if the recipient determines the matter does not require processing as an emergency, the grievance may be sent for processing at a lower level. *Id*.

Here, plaintiff sent an undated grievance, received September 30, 2005, directly to defendant Werholtz, then Secretary of the Kansas Department of Corrections, alleging a lack of accommodation for the failure to assign him to a unit with handicapped showers. A designee returned the grievance to defendant McKune, then Warden, because plaintiff failed to follow the appropriate procedure.

On October 26, 2005, plaintiff sent additional grievance forms to defendant Werholtz on several topics, again including the lack of handicap-access showers. Again, a designee returned the grievances to defendant McKune.

The attachments to the *Martinez* report suggest that plaintiff

submitted a grievance in mid-September 2005 to the Unit Team concerning his attempts to shower in another cellhouse or to use shower facilities in the medical clinic. The response advised plaintiff that he had not been classified as medically unassigned or handicapped and that unit staff had received instructions from the Captain to have him shower in the cellhouse to which he was assigned.[10] There is no showing on the record that the Warden entered any response, or that the plaintiff made any subsequent appeal to the Secretary after the time for a response. Accordingly, the record does not support a finding of exhaustion of remedies.

*Failure to state a claim for relief*

Defendants also assert that plaintiff has failed to state a claim under either the Eighth Amendment or the ADA.

Prison officials violate the Eighth Amendment by deliberate indifference to the serious medical needs of a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). As previously stated, an Eighth Amendment claim has both a subjective component and an objective component. To establish the objective component, the prisoner must establish a sufficiently serious deprivation. *See Farmer,* 511 U.S. at 834. To establish the subjective component, the prison official must be shown to have a mental state of "'deliberate indifference' to inmate health or safety." *Farmer, id.*, (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991)).

---

[10] Doc. 65-3, p. 10, grievance response dated 9/20/05.

A difference of opinion between a prisoner and prison medical personnel concerning a diagnosis or the appropriate course of treatment is not sufficient to establish an Eighth violation. *Estelle*, 429 U.S. at 107; *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980).

Here, plaintiff's preference for a handicapped-access shower is not supported by a medical determination. Rather, as noted by defendants, staff members contacted facility medical staff to determine whether plaintiff's request was supported by any medical finding or recommendation but found no information supporting his request; in addition, defendants point out that a staff member reported that he observed plaintiff using a non-handicap-access shower in early October 2005.[11]

There is no evidence to support an objective need for handicap-access shower facilities, nor is there evidence of any deliberate indifference by any defendant to the plaintiff's health or safety. There is no claim for relief under the Eighth Amendment.

Next, the ADA does not apply to disputes concerning the adequacy of medical care provided to a prisoner. *See Rashad v. Doughty*, 4 Fed.App'x 558, 560 (10th Cir. 2001)("[T]he failure to provide medical treatment to a disabled prisoner, while perhaps raising Eighth Amendment concerns in certain circumstances, does not constitute an ADA violation.") *See also Nasious v. Colorado*, 495 Fed.Appx. 899, 902 (10th Cir. 2012)(quoting *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir.

---

[11] Doc. 65-3, p. 4.

1996)(explaining the ADA "would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners. No discrimination is alleged; [plaintiff] was not treated worse because he was disabled…The ADA does not create a remedy for medical malpractice.")

Plaintiff has shown only that he did not receive the access to a particular type of shower facility that he desired. There was no medical finding supporting that preference, nor is there any showing that he was subjected to deliberate indifference or any discrimination. Defendants are entitled to summary judgment on this claim.

*Claim 4*

On November 17, 2005, defendant Trexler required plaintiff to stand for formal count.[12] On the following day, plaintiff filed two grievances concerning that requirement.[13] The grievances were consolidated and numbered as AA20060524. On the same day, the Unit Team Manager (UTM) responded with a finding that plaintiff did not have an exemption from the requirement that he stand during formal count.[14]

Plaintiff appealed to the warden, defendant McKune, who upheld the response of the UTM.[15] Plaintiff next appealed to the Secretary,

---

[12] Doc. 39, par. 52, and Doc. 84, par. 17.
[13] Doc. 65-3 at 21.

[14] Doc. 65-3, p. 24.
[15] Doc. 65-3, p. 19.

who, through a designee, also upheld the response.[16]

In March 2006, plaintiff sent a letter to defendant Werholtz concerning the requirement that he stand for formal count. Werholtz consulted with the Contracts Management Consultant to determine if there was any medical reason plaintiff could not stand for count and whether he needed any handicap aide.[17] In response, Kim Palmer, Health Services Aide, replied that a physical capacity profile prepared by rehabilitation specialists in January 2006 had found that plaintiff could perform medium to heavy work, could exert 20-50 pounds of force occasionally, 10-25 pounds of force frequently, and up to 10 pounds of force constantly.[18]

On April 5, 2006, the Secretary's designee wrote to plaintiff explaining that his request for a handicap aide was denied and finding no reason to excuse him from standing during count.[19]

Plaintiff alleges these actions violated the Eighth Amendment.

As discussed, an Eighth Amendment violation occurs where prison officials act with deliberate indifference to a condition that is sufficiently serious. *Farmer*, 511 U.S. at 834. However, where the plaintiff fails to demonstrate "a specific deprivation of a human need, an Eighth Amendment claim based on prison conditions must fail." *Shifrin v. Fields*, 39 F.3d 1112, 1114 (10th Cir. 1994)(internal citation omitted).

Defendants Trexler and Spear argue there is no ground for relief,

---

[16] Doc. 65-3, p. 17
[17] Doc. 65-3 pp. 13-16.
[18] *Id*.
[19] Doc. 65-3, p. 12.

and the court agrees there is no basis for liability. First, as an objective matter, there is no medical determination that supports plaintiff's claim that he was exempt from standing for count. Second, there is no evidence that the defendants acted with any deliberate indifference to plaintiff's health or safety. Rather, they consulted with appropriate staff members and required plaintiff's compliance with count based upon the information provided. Defendants Trexler and Spear are entitled to summary judgment.

*Claim* 7.

Plaintiff states he was not provided assistance after a fall. The complaint states that he requested a wheelchair from defendant Green while returning to his cell from a meal.[20] No date is provided by plaintiff, though defendants suggest, based upon medical records, that this event occurred in mid-June 2006.[21]

At that time, plaintiff was allowed to use a cane.[22] Nurses' notes from June 12, 2006, state that plaintiff had been requesting transfer by a wheelchair on multiple occasions, and that plaintiff had stated on that day, "If you don't take me by wheelchair then I will just fall." The report also states that plaintiff refused to remove or release a brace on his ankle to alleviate numbness in his leg.[23]

A medical report prepared later the same date states that plaintiff "was seen walking across street without apparent difficulty [when the] inmate asked to have a medical emergency called. No medical

---

[20] Doc. 39, par. 60-62.
[21] Doc. 65-1, pp. 16-20.
[22] Doc. 65-1, p. 20.
[23] Doc. 65-1, pp. 16-17.

emergency was called [and the] inmate fell to his right side and would not move." Plaintiff then was taken by wheelchair to his cell.[24]

A report prepared on June 13, 2006, reflects that a second nurse was called because plaintiff had fallen. Plaintiff then explained he had asked for a wheelchair because of numbness in his leg.[25] Defendant interprets these reports to show that plaintiff fell twice on June 12, 2006.

Defendant Green argues that these facts do not support an Eighth Amendment claim, pointing out that there is no evidence that Green had notice that plaintiff would fall, nor that he interfered with or delayed medical aid to the plaintiff.

The court concludes the record does not support liability. First, there is no showing of exhaustion of administrative remedies. Next, even assuming this claim to be properly exhausted, the record does not support liability under the Eighth Amendment. First, plaintiff had received the aides which were prescribed, though he did not receive the regular access to a wheelchair that he desired. The condition is not sufficiently serious to establish the objective prong under *Farmer*. Finally, there is no evidence that Green acted with deliberate indifference. Defendant Green is entitled to summary judgment on this claim.

*Claim 10.*

On December 7, 2005, UTM Medill prepared two disciplinary reports charging plaintiff with disrespect. Plaintiff acknowledged receipt

---

[24] Doc. 65-1, p. 17.
[25] Doc. 65-1, p. 19.

on the following day. On December 13, 2005, Medill withdrew the reports.[26]

On April 23 or 24, 2009, plaintiff submitted a personal injury claim.[27] The Grievance/Property Claims Officer returned the form to plaintiff on April 27, 2009, because the form was not notarized as required by policy.[28]

On May 4, 2009, plaintiff had the claim form notarized, and it was designated Property Claim ##AA0109635.[29] Defendant McKune denied the claim on May 15, 2009.[30] The Secretary's designee denied the claim on May 27, 2009.[31]

On April 29, 2009, plaintiff filed two claims with the Joint Committee for Special Claims Against the State (Committee). These claims concerned events between March 5 and 12, 2009, and alleged injuries, a failure to provide appropriate medical care, and a request for handicapped facilities. The Committee assigned the claims ## 6169 and 6170. Plaintiff was given an opportunity to participate in the hearing.[32]

On July 14, 2009, the Committee directed plaintiff to resubmit the claims on revised forms and specify a monetary amount for each claim.[33] The Committee also received a response from the KDOC.[34] By

---

[26] Doc. 65-3, pp. 68, 74-75.
[27] Doc. 65-3, p. 64.

[28] Doc. 65-3, p. 61.
[29] Doc. 65-3, p. 48.
[30] Doc. 65-3, p. 49.
[31] Doc. 65-3, p. 47.
[32] Doc. 157, Attach. 1-3.
[33] Doc. 157, Attach. 4.
[34] *Id.*, Attach. 5.

a letter dated November 4, 2009, the Committed notified plaintiff that his claim was denied without prejudice due to his failure to participate in the hearing.[35]

On November 24, 2009, plaintiff wrote the Committee explaining that his failure to participate was due to the location of the telephone.[36]

Defendants McKune and Werholtz seek summary judgment on this claim. Plaintiff presents several arguments. First, he claims he is afraid to file grievances due to potential disciplinary reports, citing the adverse decisions he received in grievances concerning claims that personnel would not process his grievances.[37] He also claims the two disciplinary reports issued in December 2005 were based upon his filing of grievances.[38]

Defendants point out, however, that the disciplinary reports filed in December 2005 were withdrawn a few days later, and that plaintiff has not received a disciplinary report based upon any of the claims he presents in this matter. Finally, they note that although plaintiff has presented grievances directly to the Warden and Secretary, he was not penalized for failing to follow proper procedures.

Plaintiff also appears to claim his attempts to file personal injury claims were thwarted. A review of the record, however, shows that the Committee dismissed his claims without prejudice due to his

---

[35] *Id.*, Attach. 6.
[36] *Id.*, Attach. 7.
[37] Doc. 65-3, p. 13.
[38] Doc. 39, par. 93.

failure to participate. The letter advising his of the dismissal states that plaintiff may submit the claims again without further evidence.[39] However, there is no evidence on the record that plaintiff filed a grievance or made any effort to resubmit the claims.

The court finds no evidence in the record to support any claim of constitutional dimension concerning interference with plaintiff's use of the grievance procedure, the commencement of disciplinary actions against plaintiff, or access to the Joint Committee for Special Claims. Plaintiff may not rest upon vague allegations of fact, and the record does not suggest any real effort by the plaintiff to pursue administrative grievances. Defendants McKune and Werholtz are granted summary judgment on this claim.

*Claim 18.*

Plaintiff claims that since he fell in the porter's closet in September 2005, he has needed medical equipment, such as a cane, crutches, or wheelchair; that he has been denied assignment to a housing unit with handicap-accessible showers; that he cannot perform the duties assigned to him when he must walk or stand because of physical disabilities; that in housing units Q-2 or Q-3 he was required to climb a steep walkway to confer with counselors; and that in K Unit he fell or almost fell because he was not provided a cane and crutches.

Defendants Trexler, Walker, Nance, McKune, and Werholtz seek summary judgment on this claim. They point out that the incidents identified by plaintiff are not supported by specific information

---

[39] Doc. 157, Attach. 6.

concerning when the alleged events occurred; they also contend that many of the incidents were not the subject of any grievances filed by plaintiff.

Claim 18 consists of allegations appearing in Doc. 39 at par. 26-39; 79-80, 143-158, 196-197, and 233.

Defendants specifically contend as follows:

(1)    the incidents set out in paragraphs 26-31 and 39 are the subject of grievances filed in 2005 and involve the same matters as Claims 1-3.

(2)    the incidents in paragraphs 31-37 concern events occurring in 2009. Plaintiff has failed to exhaust grievances concerning these claims.

(3)    the incidents in paragraphs 79-80 and 196-197 occurred during plaintiff's assignment to Q Block, which was from June 23, 2006, to December 29, 2006; March 9, 2007, to May 8, 2007, and from April 13, 2009. Plaintiff has not pursued grievances concerning these claims.

(4)    the incidents in paragraphs 143-158 occurred in 2006 and are unexhausted;

(5)    the undated incident in paragraph 233 occurred during plaintiff's assignment to K Block; that housing assignment was between May 8, 2007, to June 26, 2007.

Defendants contend plaintiff has filed no grievance since November 2005, and therefore, the claims in (2)-(5) above are unexhausted.

The uncontroverted record supports these arguments. First, plaintiff's claims concerning the need for additional mobility aides and handicap-access shower facilities appear to be identical to those presented, and resolved against him, in Claims 1-3.

Next, there is no evidence in the record that reasonably suggests that plaintiff made any effort to exhaust the claims arising in 2007 and thereafter. As discussed, the exhaustion requirement imposed by

42 U.S.C. § 1997e(a) is mandatory and "unexhausted claims cannot be brought in court." *Thomas v. Parker*, 609 F.3d 1114, 1117 (10th Cir. 2010)(internal quotation marks omitted).

Accordingly, having considered the record, the court finds defendants are entitled to summary judgment on the remaining claims presented in Claim 18 because the plaintiff failed to present them through the administrative grievance procedure.

*Lack of service on remaining defendants*

Efforts to obtain service on other defendants in this matter proved unsuccessful. "While an incarcerated pro se plaintiff proceeding in forma pauperis is entitled to rely on the U.S. Marshal for service of the summons and complaint, … [n]either the U.S. Marshal nor the Clerk of the Court are required to search for 'a defendant who 'cannot be served … at the addresses on record with the court.'" *Barksdale v. Connaghan*, 2012 WL 6770883, at *10 (D. Colo. 2012)(citing *Kiley v. Kurtz*, 533 F.Supp. 465, 467 (D. Colo. 1982)).

In light of the time that has passed, the claims against the unserved defendants will be dismissed without prejudice pursuant to Fed.R. Civ. P. 4(m).

*Motions for sanctions and other relief*

Four remaining motions filed by plaintiff are pending before the court, namely:

#150: Motion for relief and for sanctions against defendants for retaliatory actions against plaintiff for filing lawsuit in this matter;

#155: Motion for sanctions;

#165: Motion to clarify orders; and

#170: Motion for sanctions.

The court has examined these motions, which may be summarized as follows:

In plaintiff's first motion for relief and sanctions, he asserts that defendants and some prison staff members dislike him, complain of the costs of litigation, and try to restrict access to the prison library. He also alleges that the defendants have encouraged other prisoners to provoke plaintiff to excuse subsequent mistreatment of him. He complains broadly of his living conditions and complains that defendant McKune has failed to comply with accommodations he agreed to supply after plaintiff filed a complaint with the United States Department of Justice. Plaintiff alleges that prison staff has left a posting in the dormitory in Unit Q-1, which he asserts is evidence of their tolerance for violence against prisoners who file complaints and pursue litigation. Finally, he asserts that in May 2012, other prisoners entered his living area and opened an exterior window, removing plaintiff from his assigned bunk and injuring him. Plaintiff was taken to the clinic after this incident, where he received an injection for pain relief, and returned to the housing area by wheelchair.

Plaintiff's second motion for relief and sanctions describes an exchange in October 2012 with a staff member concerning plaintiff's delivery of a crumpled paper order sheet to the prison canteen. He alleges that a loud discussion of his physical infirmities ensued,

which he characterizes as an invitation to predatory inmates and an "overt security violation."[40]

Plaintiff's motion to clarify orders describes his disabilities and complains generally that the court has failed to grant any relief to accommodate his circumstances.

Plaintiff's final motion for sanctions claims that prison employees have incited other prisoners by stating that he is responsible for the diversion of funds to improving accessibility.

Prison officials may not retaliate for a prisoner's exercise of constitutional rights. *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990). A prisoner claiming retaliatory conduct "must allege specific facts showing retaliation because of the exercise of [his] constitutional rights." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)(internal quotation marks and citation omitted).

Plaintiff's allegations are not supported by specific allegations of fact, nor does he show any nexus between his pursuit of legal remedies and acts or omissions by the defendants. Finally, plaintiff has not identified any specific instance of harm from such events as his verbal exchange with staff in the prison canteen concerning the crumpled order sheet he produced.

Likewise, to the extent plaintiff complains of the conditions of his confinement, such as the open window in his cell or a failure to adequately accommodate his physical infirmities, he does not make a persuasive argument that these events were retaliatory or that they

---

[40] Doc. 155, p. 2.

provide a legal basis for the imposition of sanctions in this matter. Rather, plaintiff may pursue administrative remedies to seek relief from conditions that he believes are unlawful.

In sum, the court finds no basis for relief and will deny these motions.

IT IS, THEREFORE, BY THE COURT ORDERED plaintiff's motion for relief and for sanctions (Doc. 150) is denied.

IT IS FURTHER ORDERED plaintiff's motion for sanctions (Doc. 155) is denied.

IT IS FURTHER ORDERED defendants' motion to dismiss or for summary judgment (Doc. 156) is granted.

IT IS FURTHER ORDERED plaintiff's motion to clarify orders (Doc. 165) is denied.

IT IS FURTHER ORDERED plaintiff's motion for sanctions (Doc. 170) is denied.

IT IS FURTHER ORDERED plaintiff's claims against unserved defendants are dismissed without prejudice.

Copies of this order shall be transmitted to the parties.

**IT IS SO ORDERED.**

DATED:  This 12th day of August, 2013, at Topeka, Kansas.


                              S/ Sam A. Crow
                              SAM A. CROW
                              U.S. Senior District Judge